SAMUEL E. SEWALL & another, trustees, vs. SKIPWITH
WILMER & others.

Suffolk. January 24; September 7, 1881. — January 4, 1882.

The Gen. Sts. c. 92, § 25, enacting that, when a testator omits to provide in his
will for any of his children, they shall take the same share of his estate that
they would have been entitled to if he had died intestate, unless he has provided
for them in his lifetime, or unless it appears that the omission was intentional,
do not apply to an estate in which he has merely a power of appointment.

A testator domiciled in this Commonwealth devised real and personal estate sit-
uated here to trustees in trust to the use of his daughter until her arrival at the
age of twenty-one years or marriage within that age, and then in trust to con-
vey one half to her discharged of all trusts, and to hold the other half during
her life, paying her the income thereof, and, on her death, in trust to convey
the same as she should, by deed or writing, or by her last will, or by any writ-
ing purporting to be her last will, appoint, and, in default of such appointment,
to the use of her children and their heirs. The daughter married a resident
of another State, and died there, possessed of property, real and personal, other
than that over which she had the power of appointment; and leaving the hus-
band and two children, and a will, which was duly admitted to probate in that
State and in this Commonwealth, by which she devised to her husband all the
real and personal estate to which she should be entitled in law or equity at the
time of her decease, but made no mention of the power of appointment. By
the law of the State of her domicil, her will was not a good execution of the
power of appointment. Held, on a bill in equity by the trustees under the
father's will to determine to whom they should transfer the property held by
them, that by the law of this Commonwealth the daughter's will was a good
execution of the power; and that the power was therefore well executed.

GRAY, C. J. Frederic Tudor of Boston, who died in 1864,
by his will, which was duly admitted to probate in this Com-
monwealth, devised the residue of his estate, real and personal,
in trust to the use of his children in equal shares till their arrival
at the age of twenty-one years or marriage within that age;
and " as to, for and concerning the share that shall hereunder
be coming to " any daughter at her marriage or coming of age,
" this to be held by said trustee in trust and to her use " till
such marriage or coming of age, then in trust to convey " one
half of her share," together with half of any accumulations of
income, to her absolutely, discharged of all trusts; and " as to
and for the other half share of my said daughter, this to be held
by said trustee to her sole and separate use, freed from the con-
trol or interference of her husband, during her natural life,"

yielding and paying the income to her quarterly on her sole and separate written order therefor, " and upon her death, then upon trust to convey, pay and deliver, or hold the same, to the use of such persons, or for such uses, estates, and subject to such provisions, limitations and agreements, as my said daughter shall, by any deed or writing to be by her signed, sealed and delivered in presence of three or more credible witnesses, or by her last will and testament in writing, or by any writing purporting to be her last will and testament, to be by her duly executed in the presence of a like number of credible witnesses, give, direct, limit and appoint, and, in default of such will or appointment, then upon trust to hold the same to the use of her children and their heirs respectively as tenants in common, and the legal representatives of any such child or children who may have deceased to be entitled to the same share as his or their parent would have been if then living ; and in case my said daughter shall die without issue, and without having made any testamentary disposition or appointment of the uses thereof," then to the testator's heirs at law.

His daughter Delia in 1871 married Skipwith Wilmer of Baltimore, in the State of Maryland, and had four children by him, two of whom survived her, and she resided with her husband at Baltimore until her death in 1879. In 1872, a month before the birth of her oldest child, and having by the law of Maryland full testamentary capacity as if she were unmarried, she signed and sealed in the presence of three witnesses a will, which was duly admitted to probate in Maryland, and also as a foreign will in this Commonwealth, the whole of which, except the formal parts and the appointment of her husband to be sole executor, was as follows: " I devise and bequeath all the real and personal estate to which I shall be entitled in law or equity at the time of my decease unto my husband Skipwith Wilmer aforesaid, his heirs and assigns, absolutely."

At the times of executing her will and of her death, the trustees, who had been appointed by decree of the probate court in this Commonwealth under the will of her father, and who resided here, held in trust for her property, real and personal, to the amount of $80,000, all the real estate being situated in this Commonwealth ; and she was the owner in her own right

of personal property to the amount of $20,000, and of real estate in this Commonwealth to the amount of $40,000, and also of an equity, worth $8000, of redeeming other real estate in this Commonwealth from a mortgage made by her and her husband; parts of this equity of redemption and of her other real estate being subject to the dower of her father's widow.

The present suit is a bill by the trustees for the instructions of the court. Her husband and her two surviving children are made parties defendant, and have filed answers presenting the question whether the husband or the children are entitled to the property so held by the plaintiffs in trust for her.

It was suggested, though not strongly pressed, in behalf of the children, that, even if her will is expressed in apt terms to pass this property to her husband, yet the children are entitled to a share of it, under the Gen. Sts. *c.* 92, § 25, by which it is enacted that, " when a testator omits to provide in his will for any of his children, or for the issue of a deceased child, they shall take the same share of his estate, both real and personal, that they would have been entitled to if he had died intestate; unless they shall have been provided for by the testator in his lifetime, or unless it appears that such omission was intentional, and not occasioned by accident or mistake." But it is a sufficient answer to this suggestion, that the statute is evidently limited to estate of a testator, to which his children would have derived title from him, under the statutes of descents and distributions, if he had made no will; and has no application to estate which was not vested in him, in which he had no inheritable title, but a power of appointment only, and which, in case of his failure to execute the power, his children could not have claimed under him as his heirs or next of kin, but only as devisees or legatees under the will of the person who created the power. *Blagge* v. *Miles*, 1 Story, 426, 442.

The principal point in controversy between the husband and the children of Mrs. Wilmer is whether her will is a good execution of the power conferred on her by the will of her father; and the arguments upon this point have presented three questions: 1st. Whether this is a good execution under the law of Maryland? 2d. Whether it is a good execution by the law of Massachusetts? 3d. Which law must govern the case?

The decisions of the Court of Appeals of Maryland, which are made part of the report on which the case has been reserved for our determination, clearly show that the law is settled in that State, in accordance with English cases decided since the American Revolution, that "the intention to execute a power of appointment by will must appear by a reference in the will to the power or to the subject of it, or from the fact that the will would be inoperative without the aid of the power;" *Mory* v. *Michael*, 18 Md. 227, 241; *Michael* v. *Morey*, 26 Md. 239, 259; *Maryland Society* v. *Clendinen*, 44 Md. 429, 435; and that it is also settled, upon principles everywhere recognized, that the admission of a will to probate establishes only its validity as a testamentary instrument, and does not determine the extent of its operation. *Michael* v. *Baker*, 12 Md. 158. *Schley* v. *McCeney*, 36 Md. 266, 275. As the will of Mrs. Wilmer does not mention the power, nor the subject of it, and as she had other property of her own upon which her will could operate, it is clearly not a sufficient execution of the power under the law of Maryland.

But in this Commonwealth the decisions in England since our Revolution and before the St. of 7 Will. IV. & 1 Vict. c. 26, § 27, have not been followed; the court has leaned toward the adoption of the rule, enacted by that statute as to wills thereafter made in England, namely, that a general devise or bequest should be construed to include any real or personal estate of which the testator has a general power of appointment, unless a contrary intention should appear by his will; and it has been adjudged that the mere facts that the will relied on as an execution of the power does not refer to the power, nor designate the property subject to it, and that the donee of the power has other property of his own upon which his will may operate, are not conclusive against the validity of the execution of the power; but that the question is in every case a question of the intention of the donee of the power, taking into consideration not only the terms of his will, but the circumstances surrounding him at the time of its execution, such as the source of the power, the terms of the instrument creating it, and the extent of his present or past interest in the property subject to it; and a general devise of all the estate, real and personal, of which the testator should

die seised or possessed, has accordingly been held to be a good execution of a power reserved to him in a trust settlement, made by him or by his direction, of property either his own or for which he had paid the consideration, and of which by the terms of the settlement he had the beneficial use during his life, as well as an absolute power of appointment after his death. *Amory* v. *Meredith*, 7 Allen, 397. *Willard* v. *Ware*, 10 Allen, 263. *Bangs* v. *Smith*, 98 Mass. 270. See also the very able opinions of Chief Justice Denio in *White* v. *Hicks*, 33 N. Y. 383, and of Mr. Justice Baker in *Funk* v. *Eggleston*, 92 Ill. 515.

In the present case, Mrs. Wilmer indeed had never owned the property in question, nor paid any consideration for it, nor had the power been created by herself. But the power was created by the will of her father, in which he speaks of the property to be conveyed to her on her coming of age or marriage, and of the property to be thereafter held in trust for her sole and separate use during her life, and conveyed to her appointees, or, failing any appointment, to her children, after her death, as together constituting " her share " of his estate. If she had been domiciled in this Commonwealth, and had here executed the will devising and bequeathing to her husband all the real and personal estate to which she should be entitled in law or equity at the time of her decease, it must, under the law of Massachusetts, as declared by the judgments of this court, have been held that she intended to make no distinction between the two halves of her share of her father's estate, of which the one had vested in her absolutely, and the other she had the exclusive beneficial use of for life and the general power to appoint after her death, and that the power was well executed.

We are then brought to the more interesting question, whether the construction and effect of the instrument, relied on as an execution of the power conferred on Mrs. Wilmer by her father's will, are to be governed by the law of Massachusetts or by the law of Maryland. This question is singularly free of direct authority.

As to the form of executing the power, it would seem that a will executed in the form authorized by the law of either State would be sufficient. On the one hand, it has been decided by the House of Lords, on appeal from Scotland, that a power of

appointment reserved by a man residing out of Scotland, in a settlement by him of real estate in Scotland, was well executed by a will in the form required by the law of his domicil.  *Willock* v. *Ouchterlony*, 3 Paton, 659.  *Brack* v. *Johnston*, 5 Wils. & Sh. 61.  And a like decision has been made by Lord Romilly, M. R., in a case of the execution in France of a power created by an English will.  *D'Huart* v. *Harkness*, 34 Beav. 324.  On the other hand, it is held in England that where a power of appointment by will is given by the will of a person domiciled in England, and is executed abroad by a will in a form required or permitted by the law of England, the will of the donee should be admitted to probate in England, although not executed with the forms required by the law of the donee's domicil.  But it does not distinctly appear whether this is upon the broad ground that the power is well executed, or upon the narrower ground that the will should be formally established as a testamentary instrument in a court of probate, leaving it to a court of construction to determine whether it can have any effect.  *Tatnall* v. *Hankey*, 2 Moore P. C. 342.  *Goods of Alexander*, 29 L. J. (N. S.) Prob. 93, 94; *S. C.* 1 Sw. & Tr. 454, note.  *Barnes* v. *Vincent*, 5 Moore P. C. 201, 217.  *D'Huart* v. *Harkness*, 34 Beav. 328.  *Goods of Hallyburton*, L. R. 1 P. & D. 90.

The case at bar does not present a question of form, but of construction; and upon principle the instrument executed by Mrs. Wilmer, being expressed in terms sufficient to constitute an effectual appointment by the law of Massachusetts, must be held a good execution of the power.

It is true that, as to personal property at least, the construction and effect of a will, and the distribution thereby made of the testator's estate, are to be governed by the law of his domicil.  *Yates* v. *Thomson*, 3 Cl. & Fin. 544, 570, 585; *S. C.* 1 Sh. & McL. 795, 835.  *Enohin* v. *Wylie*, 10 H. L. Cas. 1.  *Harrison* v. *Nixon*, 9 Pet. 483.  *Fellows* v. *Miner*, 119 Mass. 541, 544. But the property of which Mrs. Wilmer has a power of appointment is not her property, but the property of her father; and the instrument executed by her takes effect, not as a disposition of her own property, but as an appointment of property of her father under the power conferred upon her by his will.  The domicil of the testator whose property is in question is therefore

the domicil of the father. The property is held by trustees residing and appointed in Massachusetts, and must be distributed here, and the trustees cannot be compelled to account for it in Maryland or in any other State, even if they should be personally found there. *Campbell* v. *Wallace*, 10 Gray, 162. *Jenkins* v. *Lester*, 131 Mass. 355. *Leland* v. *Smith*, 131 Mass. 358, note. As the father did not require the power to be executed by will, but allowed it to be executed by any instrument purporting to be a will, or by any deed or writing signed and sealed in the presence of three witnesses, it is clear that he did not intend that it should be executed only by will effectual according to the law of his daughter's domicil; and she cannot be presumed to have intended that the instrument executed by her in the form of a will should have less effect than if it had no testamentary character.

As the property which Mrs. Wilmer has the power to dispose of is the property of a person domiciled here, is here held by trustees who can only be compelled to account for and distribute it here, and is part of her share of her father's estate, the other part of which, clearly included in her will, she has derived from the same source, and as no testamentary form is requisite to her execution of the power, she must be presumed to have intended that her will should have the effect, by way of appointment, attributed to it by the law of the only place in which it could be made operative as such, and by the court upon which the duty of expounding it devolves.

The decision in *Bingham's appeal*, 64 Penn. St. 345, goes farther than is necessary for the decision of this case. William Bingham died in 1856, having his domicil in Pennsylvania, and by his will bequeathed personal property in trust to pay the income to his son for life, and upon his death to pay the principal to such persons as he should by will bequeath it to, or, in case of his dying intestate, to his issue, or, failing such issue, to other children of the testator. The son afterwards died domiciled in England, leaving a large estate of his own, and a will devising and bequeathing "all the rest and residue of my property," in terms sufficient under the St. of 7 Will. IV. & 1 Vict. to execute the power, but insufficient for that purpose by the law of Pennsylvania. The Supreme Court of Pennsylvania held

that the power was not well executed, because the property in question was William Bingham's, and not his son's, and therefore, applying the rule that the same interpretation of a will should be given in a foreign country which the will has in the place of domicil, "the will, the property and the domicil of William Bingham being within Pennsylvania, the law of this State must govern the interpretation both of the power and the execution of it."

In the case at bar, the instrument executed by Mrs. Wilmer being sufficient under the law of Massachusetts, and therefore a good execution of the power, it is unnecessary to consider whether, if it had been sufficient by the law of Maryland and insufficient by the law of Massachusetts, it would have been an equally good execution.   And all the real estate concerning which the plaintiffs ask for the instructions of the court being in Massachusetts, it becomes also unnecessary to consider how far, had it been situated elsewhere, the *lex domicilii* should yield to the *lex rei sitæ.*   See *Bovey* v. *Smith*, 1 Vern. 60, 84, 144; *Trotter* v. *Trotter*, 4 Bligh N. R. 502; *S. C.* 3 Wils. & Sh. 407; 1 Jarman on Wills, 1; Story Confl. §§ 479 *a*, 479 *h*; Whart. Confl. § 597; Dicey on Domicil, 307; Westlake's Private International Law (ed. 1880) 181.

The result is, that in the opinion of a majority of the court the power of appointment has been well executed, and there must be a                                 *Decree for the husband.*

*E. H. Bennett*, for the husband.

*F. W. Hurd*, for the children.