HELEN D. HOWLAND, executrix, *vs.* WILLIAM C. PARKER & another, trustees, BARKER C. HOWLAND, claimant.

Bristol.    October 26, 1908. — November 24, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Power.    Devise and Legacy.*

A husband and wife executed with a trustee an agreement in writing whereby they agreed to live apart and the trustee received $5,500 " to be deposited in . . . banking institutions," from which and its income he was to pay to the wife $250 semiannually.    The agreement also provided that, on the death of the wife, the trust should terminate and the fund be paid " to such persons or be disposed of in such manner as " the wife " shall by her last will direct," but that, " in the event of " the wife " dying intestate," the fund should be paid to the husband.    The wife afterward died leaving a will which contained, besides a specific devise and various specific bequests of personal belongings which had been given to her by the legatees, a clause, the seventh, directing that, after the payment of the debts of the testatrix, the expenses of her funeral and of the administration of her estate, and the delivery of the specific bequests, " the remainder of the money securities or deposits belonging to my estate " should be held in trust for a certain cousin, and that, upon the decease of that cousin, the trust for her benefit should terminate and " said trust estate shall then revert to my general estate and be paid to . . . [C.] . . . as hereinafter provided."    The eighth clause of the will provided that " all articles of personal property belonging to me at my decease, which are not herein specifically bequeathed or designated to be held in trust, . . . I give devise and bequeath to . . . [C.]." Upon the husband's claiming the fund in the hands of the trustee under the agreement of separation, the latter refused to deliver it to the executor of the will of the wife, and the executor brought an action of contract to recover it. The husband was summoned in to defend against such action as claimant. *Held*, without deciding whether or not the power given to the wife by the terms of separation agreement was executed by the seventh clause of her will, that, if it was not executed by the seventh clause, it was by the eighth, which was a residuary clause, and therefore that the fund should be paid to the executor of the wife's will.

Where a testator has the income of a fund for life, with a power of disposing of the principal by will, a residuary bequest in his will should be construed to be an execution of that power, unless the will shows that such clause was not intended so to operate.

CONTRACT by the executrix of the will of Mary E. Howland, to recover money alleged to be in the possession of the defendants as trustees under a written instrument by the terms of which, on the death of the plaintiff's testate, the fund was to be disposed of as by her last will she should direct. Writ in the Superior Court for the county of Bristol dated December 16 1907.

The answer acknowledged possession of the money as alleged, but stated that one Barker C. Howland claimed it. The latter was summoned to appear under R. L. c. 173, § 37, and did appear and filed an answer as claimant.

There was a trial before *Raymond,* J., without a jury, upon an agreed statement of facts. It appeared that Barker C. Howland was the husband of the plaintiff's testate. On April 4, 1905, he and the plaintiff's testate and the defendants executed an instrument by the terms of which he and the plaintiff's testate agreed to live apart, and he paid to the defendants $6,000, of which $500 was to be received by them as entire payment for their services, and $5,500 was " to be deposited in one or more banking institutions " and from the income and principal of such fund $250 was to be paid to the plaintiff's testate semiannually. The instrument also provided as follows :

" That in the event of the death of said Mary E. Howland while these trusts remain in force, thereupon said trusts shall terminate and all said funds then held in trust shall be paid by said trustees to such persons, or disposed of in such manner, as the said Mary E. Howland shall by her last will direct. In the event of the said Mary E. Howland dying intestate the said fund shall then be paid to said Barker C. Howland."

On April 14, 1905, the will of the plaintiff's testate was executed. It contained the following clauses :

" Seventh — After the payment of my just debts, expenses of funeral, cremation and burial and the administration of my estate and the delivery of the specific bequests hereinbefore given, the remainder of the money securities or deposits belonging to my estate, I ask shall be held in trust by my said Executrix during the lifetime of my cousin, Susan A. Gilbert, and during the continuance of said trust the net income received

therefrom shall, from time to time, and at least semi-annually, be paid to my said cousin for her own personal use and free from all interference or control of her husband.

" Upon the decease of my said cousin, Susan A. Gilbert, said trust shall terminate, and said trust estate shall then revert to my general estate and be paid to my said sister, Jessie E. Corson, as hereinafter provided.

" Eighth — All articles of personal property belonging to me at my decease, which are not herein specifically bequeathed or designated to be held in trust, and all right, title and interest, if any, which I may have in any real estate at my decease, I give, devise and bequeath to my said sister, Jessie E. Corson, and upon the termination of said trust, the net amount then remaining of said trust estate shall also be delivered and paid to my said sister, who shall receive, hold, enjoy and dispose of the same as her own individual property, free from the control and interference of her husband, and shall hold the same to her and her heirs and assigns forever."

The first clause of the will gave directions with regard to the funeral of the testatrix. The second, fourth and sixth clauses gave back to the persons who had given them to the testatrix " the various articles which " she had received from them " as gifts." Also in the sixth clause was included a specific legacy of a diamond ring. The third clause was a specific devise of a burial lot. The fifth clause gave to Susan A. Gilbert " as specific legacies, such articles of personal property belonging to me, not including money or articles of jewelry which may be upon the premises wherein she lives at my decease, and also my wearing apparel but not including articles of jewelry, wherever such apparel may be at my decease."

Other facts are stated in the opinion.

*E. J. Hadley,* for the plaintiff.

*W. B. Perry,* ( *G. H. Potter* with him,) for the claimant.

LORING, J. The first contention made by the executrix is that the seventh clause of the will of Mrs. Howland was a valid execution of the power, and her second, that the eighth clause is a valid execution of it if the seventh is not.

In this action it is not necessary to decide between the two. If either clause operates as an execution of the power, the fund

goes to the executrix under the rule established in *Olney* v. *Balch*, 154 Mass. 318.

We are of opinion that the fund passes under the eighth clause if it does not pass under the seventh.

It is settled in this Commonwealth that where a testator has the income of property for life with a power of disposing of the principal by deed or by will, or by will alone, a residuary bequest or devise by him of his personal or of his real property is to be construed to be an execution of that power. *Amory* v. *Meredith*, 7 Allen, 397. *Willard* v. *Ware*, 10 Allen, 263. *Bangs* v. *Smith*, 98 Mass. 270. *Sewall* v. *Wilmer*, 132 Mass. 131. *Cumston* v. *Bartlett*, 149 Mass. 243. *Hassam* v. *Hazen*, 156 Mass. 93. *Stone* v. *Forbes*, 189 Mass. 163. *Tudor* v. *Vail*, 195 Mass. 18. " The reason which has led to the establishment of the general rule which now prevails in England (St. 7 Will. IV. & 1 Vict. c. 26, § 27), as well as here, [is] that where one has the use and income of land during life with a power of disposition after death, it is natural for him to consider and treat it as his own property." C. Allen, J. in *Cumston* v. *Bartlett*, 149 Mass. 243, 250. Not only that, but it is not unnatural for him to speak of it as his own property in making his will.

In the case at bar $250 a year was to be paid to Mrs. Howland from the principal of the trust fund and the interest thereon.

The contention of the claimant is that the eighth clause of the will is not a bequest of the residue of the personal property not otherwise disposed of so as to include personal property, if any, described in the seventh clause which does not pass under that clause of the will. His argument is that the eighth clause covers " all articles of personal property belonging to me at the time of my decease not designated to be held in trust" by the seventh clause, and since money, securities and deposits are designated to be held in trust by the seventh clause they are as matter of description excluded from the eighth clause. The bequest made in the eighth clause is " all articles of personal property belonging to me at my decease, which are not herein specifically bequeathed or designated to be held in trust and all right, title and interest, if any, which I may have in any real estate at my decease I give," etc. We are of opinion that the words " designated to be held in trust" must be construed to mean given in

trust, and not to mean that money, securities and deposits are excluded as matter of description in all cases from the personal property covered by the eighth clause. The eighth clause therefore includes all personal property which does not pass under the previous provisions of the will. The devise contained in this article is confessedly a general residuary devise. It is evident that the bequest there made was intended to be equally extensive.

As to the contention of the executrix that the fund passed under the seventh clause of the will: The description of the personal property covered by that clause of the will indicates that the testator had this trust fund in mind. By the terms of the indenture creating the trust fund of $5,500, it was to be paid in money and deposited in bank, and by the agreement of the parties a promissory note had been substituted therefor. Further, if it had appeared that Mrs. Howland had no money, securities or deposits on April 14, 1905, when she executed her will, that fact would warrant holding the seventh clause to be an execution of the power. See the third class of cases mentioned by Story, J., in *Blagge* v. *Miles*, 1 Story, 426, referred to in *Amory* v. *Meredith*, 7 Allen, 397, 398. See also *Wallop* v. *Lord Portsmouth*, Appendix to Sugden on Powers, (8th Eng. ed.) 916 ; *Hurst* v. *Winchelsea*, 2 Kenyon, 444 ; *S. C.* 2 Burr. 879, and 1 Bl. 187 ; *Standen* v. *Standen*, 2 Ves. Jr. 589 ; *Grant* v. *Lynam*, 4 Russ. 292. The statement in the agreed facts that " Without the proceeds of said trust fund, the estate of the said Mary E. Howland is insufficient to pay her debts, funeral expenses and charges of administration," is not tantamount to a statement that the testatrix had no money, securities or deposits of her own to which the seventh clause could apply.

The question whether the fund passed under the seventh or eighth clause is a question which should be decided in a suit in which the legatees named in those two clauses are parties. Upon that question we express no opinion now. As we have said, the executrix is entitled to the fund, whichever way that question is answered.

The entry must be

*Judgment reversed ; judgment to be entered for the plaintiff.*